## Case No. 11,715.

### The REVERE.

[Blatchf. Pr. Cas. 276.] [1]

District Court, S. D. New York.   Dec. 16, 1862.

PRIZE—VIOLATION OF BLOCKADE— FALSE PAPERS.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. False and simulated papers as to the destination of the vessel.

In admiralty.

BETTS, District Judge. This vessel and cargo were seized, October 11, 1862, by the United States steamer Monticello, at sea, off the western bar of Cape Fear river, and sent into this port for adjudication. She was British built, and had a certificate of British registry, dated January 29, 1862, issued to Nehemiah H. Clements, of Yarmouth, Nova Scotia. The prize was libelled and arrested in this district October 25, 1862, and, no person intervening or claiming the vessel or cargo, a decree by default was duly rendered against both, November 11th thereafter. The shipping articles, executed in September, 1862, at Nassau, New Providence, stipulated for a voyage from that port to Baltimore, in the United States, and the vessel was cleared on that voyage, September 15, 1862, with a miscellaneous cargo. She had on board a bill of parcels or invoice, and two bills of lading from Henry Adderly & Co., and a letter from the same, all of the same date, dated at Nassau, and addressed to F. H. Montell & Co., Baltimore. The letter advises Montell & Co. that the articles are shipped to them for sale on account of the shippers, owners. The master, the mate and one seaman were examined in preparatorio before the prize commissioners. The master testifies that he was an Englishman by birth, but had resided in Charleston, with his family, since 1847. He was appointed to the command of the vessel September 15, 1862, by one of the firm of H. Adderly & Co. He did not know the vessel

———

1 [Reported by Samuel Blatchford, Esq.]

or the firm before that day. The mate and the second mate belonged to South Carolina. The rest of the crew were English and Italian. About thirty-nine cases of the cargo consisted of haversacks or knapsacks for soldiers. There were 800 sacks of Liverpool salt, 99 barrels of pork, and buckets, brooms, matches, &c., in the cargo. The master knew of the blockade of the Southern ports long previously. He commanded the Aigburth when she was seized,—a vessel which was condemned in this court for a breach of the blockade. He knew that Wilmington was under blockade when the Revere was arrested. She was captured October 11, 1862, between 11 and 12 o'clock a. m., on the coast of South Carolina, Wilmington light-house bearing north-northeast, eleven or twelve miles off. The master knew that there was a warning on the vessel's register not to enter any of the blockaded ports south of the capes of the Chesapeake, but says that that was before he took command of the vessel. He says that it was understood between him and Adderly & Co. that, if he did not see any blockading vessel, he should go into Wilmington, or any other port; but, if he saw no chance to go in, then he was to proceed to Baltimore. In case he got into any such port, he was to try and dispose of the cargo to the best advantage, and he was to be well remunerated. He supposes that the cargo, if it had been taken into any blockaded port, would have belonged to Adderly & Co. The other two witnesses confirm substantially the testimony of the master. The existence of the blockade was notorious. They supposed that the vessel intended to go into Wilmington, if not prevented by the blockading squadron, and they say that this vessel had run close into the North Carolina coast, and had lain off it some time, after having passed the coast of South Carolina near by, without being able to enter there.

The log affords no explanation of the course of the vessel consistently with the theory that she was pursuing the true navigation of Nassau to Baltimore. Her courses and distances are not noted, and, to judge from the report of the longitude she maintained, she must have hugged the coasts of the insurgent states from the time she reached their latitude, which apparently must have been within the first three days' run; but this conclusion is not very definite, as, during the whole period after her departure from Nassau, no natural objects are noticed on the log, nor are the distances run to the time of capture specified, either by the day or in gross.

I think it very palpable, upon the above proofs, that the vessel and cargo were prepared at Nassau, and despatched thence, for the purpose of evading the blockade at Charleston or Wilmington, and that her papers were simulated and falsified, with a view to cover that culpable purpose and attempt.

A decree of condemnation and forfeiture must be entered.